UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CAUSE NUMBER 3:07-CR-15(01)RM |
| ) | |
| TERRY WADDELL ) | |

OPINION AND ORDER

Terry Waddell testified credibly that he drove down the 400 block of South Falcon Street on June 14, 2006 without stopping, and that upon reaching the stop sign at the intersection of Falcon and Ford Streets, he saw a marked police car to the east on Ford, with a single car between the police car and the intersection. Mr. Waddell testified that he recognized the police car's occupant as Cpl. Greg Early, who had stopped Mr. Waddell before. Knowing Cpl. Early was watching, Mr. Waddell says, he came to a complete stop and was careful to signal his turn onto Ford Street. Nonetheless, Cpl. Early soon passed the intervening car and pulled Mr. Waddell over, purportedly for failing to signal his turn onto Ford Street.

Believing the stop to have been invalid, Mr. Waddell moved to suppress evidence found as a result of that stop—especially the handgun he is charged with having possessed as an unlawful user of marijuana. The court heard evidence and argument on the motion on July 24, 2007. The government's witnesses testified to facts containing significant differences from Mr. Waddell's recitation. For reasons more easily explained after setting forth the government's version of the

facts, the court finds the government's version of the facts to be true on all critical points, and so denies Mr. Waddell's motion.

Early in the afternoon of June 14, 2006, three South Bend police "NEST" officers sat in an unmarked Jeep Cherokee, parked facing north on Falcon Street, watching people as part of an investigation of suspected open-air drug dealing in the 400 block of Falcon Street. The surveillance began when Cpl. Early noted a group of people on the tree lawn; he told the officers in the unmarked NEST unit they should keep an eye on the situation. One of the officers in the Jeep, Cpl. Betsy Culp, saw one of the people on the tree lawn reach into the crook of a tree, cross the street to a parked white Cadillac, lean into the driver's side window for about a minute, then come back across the street. The Cadillac drove away. All three surveillance officers testified that they saw the Cadillac turn right at Ford Street without signaling. Cpl. Culp radioed Cpl. Early (who was waiting in a marked car in a nearby alley) to stop the Cadillac.

After stopping and approaching the Cadillac, Cpl. Early recognized the driver as Terry Waddell, whom he knew from previous investigations. Mr. Waddell's hand shook uncontrollably as he handed his driver's license and registration to Cpl. Early. Mr. Waddell had been "pretty laid back" in past dealings with Cpl. Early. Jermaine Reeves, the Cadillac's other occupant, had no identification. Police suspected Mr. Waddell and Mr. Reeves of involvement in the killing of a 16-year-old girl.

2

When Cpl. Early asked if Mr. Waddell had anything illegal in the vehicle, Mr. Waddell said, "No." Cpl. Early asked to search the Cadillac, and Mr. Waddell said, "I don't want to you to." Once the surveillance officers arrived, Cpl. Early took his drug-sniffing dog around the Cadillac's perimeter, and the dog alerted at the open driver's window. Cpl. Early told the occupants to get out of the car and saw a modest amount marijuana scattered on the passenger side of the front seat. Cpl. Early placed the dog in the car for further sniffing that produced nothing more, took the dog back to his police car, and searched the Cadillac's interior by hand. In the course of that search, Cpl. Early saw the butt of a handgun under the driver's seat. Mr. Waddell was taken into custody, and further investigation by homicide officers ensued. Cpl. Culp wrote a ticket for failing to signal a turn, but whether the ticket wound up in Mr. Waddell's hands is unclear.

Sgt. Lucas Battani questioned Mr. Waddell after giving *Miranda* warnings. In the course of that interview, Mr. Waddell told Sgt. Battani that he had smoked marijuana that morning.

Resolution of the suppression issue turns exclusively on whether Mr. Waddell signaled his turn at Falcon and Ford Streets. As noted at the outset, Mr. Waddell claims he gave a proper signal, invalidating any stop based on a supposed traffic violation, and rendering inadmissible any evidence discovered as a result of that stop. The government contends that Mr. Waddell did not signal. If the government is right, the stop was permissible, the dog's positive alert for drugs

3

produced a basis to search the car, and the gun's discovery and seizure were constitutional. *See generally* Illinois v. Caballes, 543 U.S. 405, 410 (2005).

As already noted, Mr. Waddell was a perfectly credible witness when his testimony is viewed in isolation. He was impeached slightly on minor points, but not enough to call his testimony into question. The same may be said of the government's witnesses' testimony. Cpl. Culp made some errors in her report and her recollection was less certain than ideal, but these events occurred 13 months ago and no doubt have been less significant to her life than they have been to Mr. Waddell's. Mr. Waddell understood Cpl. Culp to have testified that she never saw his brake lights; since two other officers saw the brake lights and the turn signals are in the same automotive appliance, he argues, this means she couldn't have seen whether he signaled. But Cpl. Culp did not deny seeing brake lights; she testified that she did not remember whether he braked or stopped at the intersection.

Two points lead the court to credit the government's version of the facts. First, Mr. Waddell, the only witness even to suggest that Cpl. Early was visible to him when it was time to signal his turn, admits having smoked marijuana that morning. The traffic stop occurred between 2:00 and 3:00 in the afternoon. The record doesn't say how much marijuana Mr. Waddell ingested, or precisely how much time had passed. Still, to one facing a choice between facts on which three witnesses agree and different facts presented by a single witness, it is useful to

know that the disagreeing witness likely was impaired in perceptive ability, at least to some degree, by marijuana at the time of the events being recounted.

Second, it seems wholly illogical that an experienced police officer such as Cpl. Early would tell his undercover colleagues to conduct surveillance on a group of people, then place his marked squad car in a position—one car length from the intersection just south of the surveillance—where the suspected criminals operating at curbside might have seen it.

It seems more likely than not that Cpl. Early was (as he testified) in an alley, and not in Mr. Waddell's view when Mr. Waddell reached the intersection. Mr. Waddell's firm recollection of using his turn signal hinges upon his knowing, at the time the signal would be made, that Cpl. Early was watching. From this, it flows just as likely that Mr. Waddell's belief that he signaled because Cpl. Early was there is mistaken, perhaps because the marijuana he smoked that morning affected his perception or memory. In any event, the court finds that it is more likely than not that Mr. Waddell did not signal before turning onto Ford Street from Falcon Street. A traffic violation provides probable cause for a traffic stop. Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Martin, 422 F.3d 597, 601 (7th Cir. 2005); United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005).

Accordingly, the court DENIES the defendant's motion to suppress (docket #61).

SO ORDERED.

ENTERED:     July 24, 2007

                                            /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court